JAMES J. BELHUMEUR & others *vs.* LABOR RELATIONS
COMMISSION.

Suffolk. April 4, 2000. - September 21, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Labor,* Union agency fee, Collective bargaining, Judicial review, Public
employment, Strike by public employees. *School and School Committee,*
Collective bargaining, Strike by teachers. *Public Employment,* Collective
bargaining, Strike. *Constitutional Law,* Labor, Freedom of speech and
press, Union. *Administrative Law,* Agency, Judicial review, Hearing.

Discussion of agency fee principles and procedures under which a union may
validly demand payment by nonmembers of an agency fee as a condition
of employment. [461-462]

The appropriate standard of review of a decision of the Labor Relations Com-
mission is that set forth in G. L. c. 30A, § 14, except with respect to issues
of law, which are reviewed de novo. [462-463]

In a proceeding before the Labor Relations Commission regarding a challenge
to a union agency fee, the eight-year interval between the filing and the
commission's final decision was reasonably prompt, in circumstances in
which the parties agreed to a stay pending a decision on a petition for
certiorari to the United States Supreme Court, and in which there were a
large number of factual and legal issues involving voluminous evidence.
[463-464]

The formula used by the Labor Relations Commission to determine a chal-
lenged agency fee, which calculated a nonmember's actual per capita share
of chargeable costs, was proper. [464]

This court declined to impose a per se rule suggested by *Schneider* v. *Colegio
de Abogados de P.R.,* 917 F.2d 620, 633-634 (1st Cir. 1990), for the
determination of chargeable and nonchargeable union expenditures for so-
called "mixed" activities for purposes of calculating the appropriate agency
fee to be charged to nonmembers as a condition of employment. [464-467]

The Labor Relations Commission correctly concluded that a union's account-
ing expenses were chargeable overhead expenses for purposes of calculat-
ing an appropriate agency fee; however, where the commission specifically
identified accounting costs devoted to exclusively nonchargeable activity,
that expense should have been deducted from the chargeable amount
[467-469]; further, the commission correctly concluded that the costs at-
tributable to the union's officers were chargeable overhead expenses as
well [469-470].

Expenses of a public school teachers' union related to implementing a
Statewide strike in Massachusetts were not chargeable costs for purposes
of calculating the amount of an agency fee [470-472]; however, expenses

incurred in a campaign to fund a teachers' collective bargaining agreement were chargeable [472-473].


APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court granted an application for direct appellate review.

*Susan Lee Weissinger* for Springfield Education Association.

*Bruce N. Cameron*, of Virginia, for James J. Belhumeur & others.

*John B. Cochran* for the defendant.

IRELAND, J. James J. Belhumeur and 118 other public school teachers throughout the Commonwealth[1] (collectively, charging parties) filed multiple prohibited labor practice charges with the Labor Relations Commission (commission), challenging the amount of the agency fee[2] demanded by their collective bargaining representative, the Massachusetts Teachers Association (MTA)/National Education Association (NEA) and its local affiliates (collectively, unions), over five fiscal years, 1987-1992.[3] After hearings on the MTA portion of the agency fee, the commission issued a decision concluding that the MTA had demanded an excessive agency fee. See *Matter of Springfield Educ. Ass'n, Mass. Teachers Ass'n, Nat'l Educ. Ass'n & Belhumeur*, 23 M.L.C. 233 (1997). Both the charging parties and the unions appealed. We granted their joint application for direct

[1]The charging parties are teachers at public schools in the Commonwealth or at the University of Massachusetts, represented by a union for collective bargaining purposes, but are not members of the union. See G. L. c. 150E, § 12 (authorizing requirement that public employees pay agency fee to collective bargaining agent as condition of employment).

[2]See discussion of agency fee principles, *infra* at 461-462.

[3]Over several years, the charging parties have filed hundreds of prohibited labor practice charges with the commission, challenging both the adequacy of the financial disclosure supporting the unions' agency service fee demands as well as the amount of the fees. In 1990, the commission consolidated many of the charges and dismissed the portion of the charges challenging the adequacy of the financial disclosures for most of the unions involved. We affirmed that decision. See *Belhumeur* v. *Labor Relations Comm'n*, 411 Mass. 142 (1991), cert. denied sub nom. *Belhumeur* v. *Massachusetts Educ. Ass'n*, 503 U.S. 1004 (1992). The commission did issue complaints challenging the adequacy of the financial disclosure for three of the local unions. Those cases were tried separately and, in 1997, the commission issued a decision concluding that the disclosures were inadequate. We affirmed that determination. See *Wareham Educ. Ass'n* v. *Labor Relations Comm'n*, 430 Mass. 81 (1999).

appellate review and now, with three modifications, remand the case to the commission for the entry of an order consistent with this opinion.

1. *Factual background.* Prior to the start of the hearings on the MTA portion of the service fee, the unions and the charging parties executed a partial settlement agreement. The agreement provided that, for the five contested fiscal years, the amount of the MTA portion of the agency fee would be determined by litigating a single representative year, 1990-1991. The settlement agreement also provided that the amount of the NEA portion of the agency fee would be based on a percentage of the MTA fee. The parties did not agree concerning the amount of the local fees. The commission subsequently ordered the hearings bifurcated.

The hearings on the MTA portion of the service fee began on February 8, 1993, before a hearing officer specially designated by the commission, and continued intermittently for fifty-three days, ending on December 14, 1994. Posthearing briefing concluded in July, 1995, after both parties had requested extensions of the briefing schedule. On March 21, 1996, the designated hearing officer issued a 240-page recommended decision containing extensive findings of fact and conclusions of law. The charging parties and the unions filed numerous objections to the recommended decision. On April 23, 1997, the commission issued a final decision and order expressly adopting the majority of the findings and conclusions in the recommended decision.

In its decision, the commission examined MTA's expenditures for the fiscal year 1990-1991 to determine those union expenditures that were "chargeable" to the nonmembers and those expenditures that were "not chargeable." The commission concluded that MTA had demanded $26.77 in excess service fees from each of the nonmembers.[4]

In reaching its conclusion, the commission formally adopted a framework for analyzing challenges to the amount of agency fees. The commission stated that once the amount of the agency service fee was challenged by a nonmember, the "union bears the burden of producing sufficient evidence to persuade us that

[4]The commission reached this conclusion by dividing the total chargeable expenses established in the proceedings — $8,675,253 — by the number of union members and agency fee payers — 60,276 — for a per capita cost of $143.93. The MTA had demanded $170.70.

the fee reflects the fee-payer's proportionate share of the union's chargeable expenditures." The commission further stated that, in order to prove the amount of the agency fee:

> "[A] union may rely on a prima facie showing that its service fee calculations are correct. . . . Therefore, a union's initial burden is to produce enough credible detail to warrant a finding that identified expenditures are chargeable. Unless an included expense is inherently related to collective bargaining, like grievance arbitration fees, a union must show by detailed documentary or reliable testimonial evidence that a particular expense is chargeable. . . .

> "Once a union makes its prima facie showing of chargeability, the objecting fee payer assumes a limited burden of production to probe the union's evidence and produce some evidence to rebut the union's prima facie showing. . . . However, at all times, a union retains the ultimate burden of persuasion."

2. *Agency fee principles.* It is well settled that "[p]ublic employees who are not union members may be required, as a condition of their employment, to pay an agency fee to their collective bargaining representative to support the costs of the bargaining process, contract administration, and grievance adjustment." *Lyons* v. *Labor Relations Comm'n*, 397 Mass. 498, 501 (1986), citing *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 72-73 (1982), and *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209, 225-226 (1977). It is equally well settled that public employees have a right, based in the First Amendment to the United States Constitution, to prevent the union from spending part of the agency fee to support ideological causes not germane to the union's duties as collective bargaining representative. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 447 (1984); *Lyons* v. *Labor Relations Comm'n, supra*, quoting *Abood* v. *Detroit Bd. of Educ., supra* at 234. See also G. L. c. 150E, § 12.

Consistent with these principles, a union must implement certain procedures before it may validly demand payment of an agency fee. See *Chicago Teachers Union Local No. 1* v. *Hudson*, 475 U.S. 292, 306, 310 (1986). "[T]he constitutional

requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.*[5]

If a nonmember objects to the amount of the agency fee on the basis that the fee includes expenditures for ideological activities unrelated to collective bargaining, the nonmember has an obligation affirmatively to raise that objection. See *Chicago Teachers Union Local No. 1* v. *Hudson, supra* at 306; *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 82. Once a nonmember has raised an objection, the union bears the burden of proving, by a preponderance of the evidence, the accuracy of the agency fee. See *Chicago Teachers Union Local No. 1* v. *Hudson, supra* (because union possesses facts and records, "basic considerations of fairness compel" that union bears burden of proof); *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 457 n.15; *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra.*

On appeal, the charging parties argue that they were denied a reasonably prompt hearing on their challenge; that the commission used an improper formula to compute the agency fee; and that when a union conference or meeting combines chargeable and nonchargeable activities, the union should be required to submit evidence that each expense was exclusively incurred in furtherance of chargeable activity. Additionally, both the charging parties and the unions challenge several of the commission's conclusions regarding whether particular union expenditures were chargeable.

3. *Issues on appeal.* a. *Level of review.* As an initial matter, the charging parties contest the nature of review applicable to the commission's decision. The charging parties contend that, because the determination whether a particular union expenditure is chargeable is a constitutional determination, we are required to conduct a de novo review of the entire record. We disagree.

As we have stated numerous times, our review of a commission decision is governed by G. L. c. 30A, § 14. See *Hogan* v. *Labor Relations Comm'n*, 430 Mass. 611, 613 (2000); *Lyons* v. *Labor Relations Comm'n, supra* at 503. See also G. L. c. 150E,

---

[5]See *Hogan* v. *Labor Relations Comm'n*, 430 Mass. 611, 613 (2000) (outlining statutory procedural prerequisites, contained in G. L. c. 150E, § 12, for union's collection of agency fees).

§ 11 (review of commission decision governed by G. L. c. 30A, § 14, "insofar as applicable"). In accordance with the statute, we "give due weight to the experience, technical competence, and specialized knowledge of the agency." G. L. c. 30A, § 14 (7). To the extent the commission's decision involves issues of law, however, we review the decision de novo. See G. L. c. 30A, §§ 14 (7) (*a*) ("[i]n violation of constitutional provisions") & (*c*) ("[b]ased upon an error of law"). The determination whether a particular union expenditure is chargeable involves both questions of law, which we review de novo, as well as questions of fact, which are for the commission in the first instance. See *Harrison* v. *Massachusetts Soc'y of Professors/Faculty Staff Union/MTA/NEA*, 405 Mass. 56, 59 (1989) (challenges to amount of agency fee appropriately decided by the commission in first instance); *Lyons* v. *Labor Relations Comm'n, supra* at 501 (acknowledging constitutional basis to employee's challenge to amount of agency fee); *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 76 (determining amount of service fee is technical issue within expertise and jurisdiction of commission). See also *Lehnert* v. *Ferris Faculty Ass'n,* 500 U.S. 507, 531-532 (1991) (Court of Appeals properly reviewed District Court fact finding for clear error). Cf. *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 448-455.

b. *Reasonably prompt hearing.* The charging parties contend that, because there was a nearly eight-year interval between the time the original challenge to the amount of the agency fee was filed in 1989 and the issuance of the commission's final decision in 1997, the commission did not provide a reasonably prompt hearing as required by *Chicago Teachers Union Local No. 1* v. *Hudson, supra* at 310.[6] Whether a hearing takes place in reasonably prompt manner will necessarily depend on the circumstances of the case, and, in the circumstances of this case, we conclude that the commission did provide a reasonably prompt decision.

First, much of the delay through mid-1992 was attributable to the charging parties' requests to stay the proceedings until *Bel-*

---

[6]The charging parties also argue that, because the commission failed to provide a prompt hearing, the commission was required to adhere to the "judicial rules of evidence." The charging parties have cited no authority for this proposition. Because we conclude the commission did provide a decision that was reasonably prompt in the circumstances of the case, we do not address this issue.

humeur v. *Labor Relations Comm'n*, 411 Mass. 142 (1991), cert. denied sub nom. *Belhumeur* v. *Massachusetts Educ. Ass'n*, 503 U.S. 1004 (1992), was issued, and their petition for certiorari in that case was decided. Second, the case involved a substantial number of factual and legal issues, and required the commission to receive and examine a great deal of evidence. The charging parties alone introduced approximately 1,400 documents.[7] While we acknowledge that, in other circumstances, an eight-year interval most likely would not satisfy the reasonably prompt hearing requirement, on these facts, we conclude it did.[8]

c. *Formula used by commission to compute agency fee.* Next, the charging parties contest the formula used by the commission to determine the agency fee. The commission determined the per capita agency fee by totalling expenses it concluded were chargeable and then dividing that number by the number of bargaining unit members. See note 4, *supra*. The charging parties argue that, because the use of the commission's alternative formula[9] would result in a lower fee, the commission was required to utilize the other formula. We do not agree.

Even if we assume that using another formula to calculate the agency fee would result in a lower fee, the formula used by the commission calculated the nonmember's *actual* per capita share of the chargeable costs. As such, the nonmember was not required to contribute to nonchargeable union activities and there was no intrusion on the nonmember's First Amendment rights. See, e.g., *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209, 235 (1977). The commission's use of the formula was therefore proper.

d. *Mixed activity union events.* Relying on *Schneider* v. *Cole-*

---

[7]Although it is not clear why twenty-two months were necessary in order to schedule fifty-three days of hearings, the charging parties make no claim of bad faith or dilatory tactics.

[8]None of the cases cited by the charging parties in support of their claim that much shorter delays are unconstitutional mandates a conclusion that this proceeding was unconstitutional.

[9]In *Dailey & Woburn Teachers Ass'n*, 13 M.L.C. 1555, 1564 (1987), the commission held that two formulas could be used to calculate the agency fee. The first method, the one used here, divides the chargeable expenses by the number of members of the bargaining unit. The second method calculates the percentage of chargeable expenditures to nonchargeable expenditures and applies that percentage to the dues amount — that is, if 75% of union expenditures are chargeable, then the agency fee is 75% of the union dues.

*gio de Abogados de P.R.*, 917 F.2d 620, 633-634 (1st Cir. 1990), the charging parties ask us to require the commission to apply the following rule: when chargeable and nonchargeable activities are combined at a union meeting or conference, none of the expenses related to that event is chargeable unless the union "proves" that each individual expense was incurred in furtherance of an exclusively chargeable activity.[10] The charging parties identify several union events to which they argue the rule should apply.[11] We decline to impose the proposed across-the-board rule.

First, the proposed rule is not mandated by the cited case. In *Schneider* v. *Colegio de Abogados de P.R.*, *supra*, a bar dues case, the court, in dicta, contemplated a hypothetical annual meeting of the bar organization where "business matters of direct concern" to the membership would be discussed but where also the chaplain would recite a prayer for Fidel Castro and the featured speaker was a prominent Sandanista. The court speculated even if the prayer and speaker took up only a portion of the meeting, it would be likely that the atmosphere at the meeting "would have become so partisan" that the cost of the entire meeting should be deducted. *Id.* In other words, "where the permissible and impermissible are intertwined beyond separation," none of the costs associated with the meeting should be allowed. *Id.* at 634.

Second, the United States Supreme Court has not applied such a rule when determining whether particular union meetings are chargeable. For instance, in *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks*, *supra* at 448-449, the Court held that a union's national convention was a chargeable activity. The Court observed that the convention was essential to the "union's discharge of its duties as bargaining agent," *id.* at 449, because a union must have the ability to maintain its organizational

---

[10]Along a similar line of reasoning, the charging parties also contend that when a union's expense category — an expense category may include expenses related to multiple events or functions — contains chargeable and nonchargeable activities and expenses, the union is required to "prove" that each and every expense in the category is devoted exclusively to chargeable activity. The mere fact that an expense is listed in an accounting expense category that combines chargeable and nonchargeable activities has no bearing on whether the activity itself is chargeable, and therefore should have no effect on the amount of proof the union must provide relative to it.

[11]These identified events range from large union conferences to the meetings of the union's board of directors.

existence and elect officers to manage the daily business of the union, and must be allowed to consult its members about overall bargaining policy. Similarly, in *Lehnart* v. *Ferris Faculty Ass'n*, 500 U.S. 507, 529-530 (1991), the Court held that the local union's expenses of sending delegates to the State and national convention were chargeable because participation by the members of the local in the activities of the parent was likely an important benefit of affiliation, and because, like in the *Ellis* case, the convention was essential to the union's performance of its duties.

Furthermore, as stated earlier, the union always bears the burden of persuading the fact finder that an expense, or a portion of that expense, is chargeable. See *Brotherhood of Ry. & S.S. Clerks* v. *Allen*, 373 U.S. 113, 122 (1963). The fact that chargeable and nonchargeable activities were combined at a union event should not automatically invalidate all the expenses of the event, nor should it necessarily impose a greater burden on the union. Instead, we conclude that the amount and detail of the evidence a union is required to produce, as a matter of law, in order to meet its burden of persuasion, depends on a variety of factors. These factors include, but are not limited to, the nature and purpose of the event and the types of attendees at the event and their level of participation, as well as the nature and extent of the political activity at the meeting. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks*, *supra* at 448-450 (union conventions necessary to governance of union held chargeable; costs of refreshments served at union social event open to nonmember held chargeable); *Lehnart* v. *Ferris Faculty Ass'n*, *supra* (costs of sending local delegates to national conventions held chargeable). Cf. *Brotherhood of Ry. & S.S. Clerks* v. *Allen*, *supra* (absolute precision in calculation of agency fee not required). The amount and detail of the evidence necessary for the union to meet its burden of persuasion will also depend on the evidence offered by the charging parties to rebut the union's claim that an expense is chargeable. Cf. *Air Line Pilots Ass'n* v. *Miller*, 523 U.S. 866, 878 (1998) ("With the *Hudson* notice, plus any additional information developed through reasonable discovery, an objector can be expected to

point to the expenditures or classes of expenditures he or she finds questionable").[12]

e. *Challenges to the commission's classification of particular expenditures.* As stated by the United States Supreme Court, in order to qualify as a chargeable expense, the union expenditure "must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Lehnart* v. *Ferris Faculty Ass'n, supra* at 519. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 448 (test is whether "expenditures are necessarily or

---

[12]Citing to *Chicago Teachers Union Local No. 1* v. *Hudson,* 475 U.S. 292, 306-307 (1986), the charging parties also contend that the commission erred because it accepted, as proof of chargeable activity, the union's admissions of nonchargeable activity. In particular, the charging parties contest the "Strecker affidavit" which the union introduced in an effort to prove the allocation of staff time between chargeable and nonchargeable activities. We need not decide whether the cited case is applicable to this case, see note 6, *supra,* or whether the Strecker affidavit is properly characterized as only an admission of chargeable activity. Here, the record is clear that the union introduced, and the commission credited, other evidence to support the allocation of staff time.

The charging parties also identify several "political" meetings which they claim the commission decided incorrectly. See note 11, *supra.* The nature and extent of the charging parties' challenge to these determinations, beyond that discussed in the text, is unclear. Regardless, to the extent that the charging parties challenge the commission's factual findings and credibility determinations, we decline to disturb those findings; and to the extent that the charging parties challenge the commission's conclusions of law, we affirm those conclusions.

As to each meeting or type of meeting challenged, the commission made detailed findings as to who attended and the purpose of the meetings and the topics discussed; where possible the commission identified and deducted discrete nonchargeable activities, or estimated and deducted the amount of political activity, or found that the political activity was incidental. The commission also made findings about the importance of the meeting to the governance or institutional integrity of the union, as well as findings about the importance of the meeting to the over-all collective bargaining relationship.

Further, we do not think the commission's application of a "presumption" to certain types of meetings — for example, the commission presumed the MTA's management meetings and board of directors' expenses were fully chargeable unless an expense was proved to be exclusively nonchargeable — shifted the burden of *persuasion* to charging parties. Rather, we think the "presumption" affected only the charging parties' burden of production, and, given the facts previously found by the commission, did so within proper bounds.

reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees"). The Court has recognized that there may be "difficult problems in drawing lines" between chargeable and nonchargeable activities, and that this is particularly true in the public sector where legislative or other public authority action is often necessary in order to execute or implement a collective bargaining agreement. See *Abood* v. *Detroit Bd. of Educ.*, 431 U.S. 209, 236 (1977).

(1) *Accounting.* The charging parties challenge the commission's conclusion that all of the union's accounting expenses were chargeable. The commission reached this conclusion by applying a presumption adopted in a previous decision: overhead expenditures necessary to maintain the union's organizational existence, such as rent, property insurance, accounting and auditing costs, and the costs of a union convention, are presumed to be fully chargeable unless there is evidence that the expense was incurred in furtherance of an exclusively nonchargeable activity. See *Newton Teachers Ass'n & Roman*, 13 M.L.C. 1589, 1596 (1987).[13] The commission found, but dismissed as de minimis, that accounting personnel had devoted fourteen hours to exclusively nonchargeable activity. The charging parties argue that accounting costs should not be presumed to be fully chargeable, but should be apportioned according to the union's over-all chargeable activities — that is, if only fifty per cent of the union's nonoverhead expenses are related to chargeable activities, then only fifty per cent of the overhead expenses should be chargeable. Under the *Ellis* reasoning, we conclude the commission, with one modification described in the next paragraph, was correct.

In *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 448-449, the Court held in relevant part that a union's expenses in connection with its national convention were chargeable. The Court reasoned that in order to perform its functions as a collective bargaining representative, a union must be able to "maintain its corporate or associational existence, must elect officers to manage and carry on its affairs, and may consult its members about overall bargaining goals and policy." *Id.* at 448. We agree

---

[13]In order for the commission to apply the presumption, the union must first produce "some evidence that the expense was incurred in connection with the union's function as a collective bargaining agent." *Newton Teachers Ass'n & Roman*, 13 M.L.C. 1589, 1596 (1987). The charging parties make no claim that such evidence was not introduced.

with the commission's reasoning that certain overhead expenses, including accounting expenses, are necessary for a union to maintain its corporate existence, and these expenses will be incurred in roughly the same amounts regardless of the amount of the union's nonchargeable expenses. Also important to our conclusion is the fact that overhead expenses such as rent and accounting fees have no communicative or political speech aspect. Such expenses therefore pose no additional burden on the nonmember's First Amendment rights than that imposed by the agency shop itself. See *Lehnart* v. *Ferris Faculty Ass'n, supra* at 519; *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 456 (issue is whether union expenses "involve additional interference with the First Amendment interests"). See also *Popejoy* v. *New Mexico Bd. of Bar Comm'rs*, 887 F. Supp. 1422, 1429 (D.N.M. 1995) (office construction expenses fully chargeable; they have no communicative value and impose no additional burden on speech); *Antry* v. *Educ. Labor Relations Bd.*, 195 Ill. App. 3d 221, 273-274 (1990) (accounting expenses fully chargeable). Where, as here, the commission identifies the nonchargeable activity, that amount should be subtracted from the chargeable costs. Cf. *Chicago Teachers Union Local No. 1* v. *Hudson*, 475 U.S. 292, 305 (1986) (amount at stake does not diminish concern).

(2) *Union officers' costs.* The charging parties also challenge the commission's conclusion that the union's president's and vice-president's costs, such as their salaries and the president's assistant's salary, were chargeable in proportion to the union's over-all chargeable expenditures. The commission reached this conclusion by applying another presumption: union officers' costs are apportioned according to the union's over-all chargeable expenditures, unless either party proves a different allocation in fact. See *Matter of Springfield Educ. Ass'n, Mass. Teachers Ass'n, Nat'l Educ. Ass'n & Belhumeur*, 23 M.L.C. 233, 245 (1997). See also *Newton Teachers Ass'n & Roman, supra* at 1596 (overhead expenses that could be directly affected by amount of union's nonchargeable activity, such as administrative salaries, postage, and telephone, are presumed chargeable to same extent as union's over-all chargeable activity).[14] The charging parties argue that the officers' costs should not be

---

[14]The union must establish by "credible record evidence that its officers have roles in governing the organization or otherwise sustaining its existence as a collective bargaining representative" before the commission will apply

treated as overhead but instead should be chargeable only to the extent that the union can demonstrate, through contemporaneous time records, the officers' actual time spent on chargeable activities. We conclude that the commission was correct to treat the officers' costs as overhead and apportion them, and the evidence submitted by the union was sufficient to meet its burden of production.

First, the union's president and vice-president have primary roles in the management of the union and the functioning of it as an organization. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 448. Second, many of the officers' costs, particularly salaries and the like, are fixed and will be incurred regardless of the amount of nonchargeable activity in which they are involved. Further, requiring senior executives such as these formally to document their activities with daily time sheets would be unduly burdensome and could interfere with the officers' ability to perform their functions. Cf. *Brotherhood of Ry. & S.S. Clerks* v. *Allen, supra* at 122; *Fell* v. *Independent Ass'n of Continental Pilots*, 26 F. Supp. 2d 1272, 1281 (D. Colo. 1998). The union is required to provide some reasonably reliable corroboration that the officers' general levels of chargeable activity were consistent with the union's over-all level of chargeable activity. That requirement was met here: the MTA submitted summary calendars of the officers' activities that had been prepared for the union's board of directors and that reflected the officers had engaged in a wide range of chargeable and nonchargeable activity. The commission found, and the charging parties do not dispute, that the officers' nonchargeable activity was not disproportionate to the MTA's over-all noncharge-able activity. The officers' costs were therefore chargeable to the extent of the union's over-all chargeable activity.

(3) *Statewide strike discussions.* The union contests the commission's conclusion that three expenses related to implementing a Statewide strike in Massachusetts or reporting or discussing Statewide strikes in other States were not chargeable.[15] The hearing officer found, and the union does not dispute, that the

the presumption. *Matter of Springfield Educ. Ass'n, Mass. Teachers Ass'n, Nat'l Educ. Ass'n & Belhumeur*, 23 M.L.C. 233, 245 (1997).

[15]The three expenditures at issue are (1) the four meetings of the Statewide Crisis Team, which the hearing officer found was formed to consider and coordinate a strike; (2) articles in Frontline, a union publication, which reported on strikes in Washington State; and (3) the travel costs of union

objective of the Statewide strike was to publicize the condition of public education funding, and the simultaneous resolve of educators, thereby raising the profile of the issue of public education funding. We conclude the expenses were not chargeable.

In *Lehnart* v. *Ferris Faculty Ass'n, supra* at 520-521, 527 (plurality opinion of Blackmun, J.), the costs of a union program designed to secure funds for public education were held to be nonchargeable because the lobbying activities were not shown to be related to "the ratification or implementation of [the petitioners'] collective-bargaining agreement," and they thus fell outside the limited context in which political activities are chargeable. *Id.* at 520 (plurality opinion of Blackmun, J.). The purpose of the activity here is virtually identical; advocating for funding of public education in general is the type of political speech for which the union may not charge. With one exception, the union expenses related to the Statewide strike were not chargeable.[16]

The commission concluded that an article that appeared in the union publication, Frontline, and that offered communication points to use during "a strike or some other unusual event" was not chargeable because the article was geared toward strikes. We conclude that the article was more in the nature of "[i]nformational support services" that are not political and are intended to benefit all members of the bargaining unit, and was therefore chargeable. *Lehnart* v. *Ferris Faculty Ass'n, supra* at 529. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 450-451, 456.

(4) *1991 activities at the University of Massachusetts at Amherst.* The hearing officer found that the university faculty had engaged in a demonstration, on April 17 and 18, 1991, in part to protest the State furlough program (see St. 1991, c. 6, § 90; *German* v. *Commonwealth*, 410 Mass. 445 [1991]) and the lack of funding of their collective bargaining agreements. She also found that the faculty had withheld expected.services during those two days, and concluded that the activities were

representatives from other States who spoke about their experiences with Statewide strikes.

[16]The commission concluded that these expenses were not chargeable because strikes by public employees are prohibited and, therefore, discussion about the desirability of a strike is not a legitimate activity. We expressly decline to decide this issue.

not chargeable because they were incident to a "two day job action." The commission concluded that regardless of whether the activities constituted a strike, they were not chargeable because the action was designed primarily to influence the higher education budget. We agree with the hearing officer.

General Laws c. 150E, § 9A, prohibits strikes by public employees and, accordingly, union expenses in connection with a strike are not chargeable. See *Lehnart* v. *Ferris Faculty Ass'n, supra* at 531. The union argues that the two-day job action was not a strike because the entire university community, including the administration, approved and participated in the protest. Whether anyone in the university administration explicitly or implicitly approved of the action is irrelevant. Because the hearing officer found that the faculty had withheld services, the action was a strike, and the expenses incident to it were not chargeable.

The union also challenges the commission's conclusion that the costs of flyers, distributed at the 1991 University of Massachusetts at Boston commencement exercises, were not chargeable.[17] The commission concluded the flyers were not chargeable because their distribution was a public relations activity not germane to the union's collective bargaining functions. We agree.

In order for public relations, lobbying, or other political activity of a union to be chargeable, the activity must not merely advocate for the general support of the employees, their profession, or public employees, but instead must be in "the limited context of contract ratification or implementation." *Lehnart* v. *Ferris Faculty Ass'n, supra* at 522 (plurality opinion of Blackmun, J.). The costs of the flyer were not chargeable.

(5) *Salisbury Proposition 2½ override campaign.* Finally, the union challenges the commission's determination that funds the MTA reimbursed the Salisbury Teachers Association for expenses incurred in connection with a local Proposition 2½ (St. 1980, c. 580) override campaign were not chargeable. The commission found that the override campaign "was initiated exclusively for the purpose of rehiring teachers who had been laid off in mid-year and mid-contract [and] that all override

---

[17]The union contends that the flyers were distributed during an ongoing dispute over funding for a collective bargaining agreement. The commission made no such finding, nor has the union pointed to any support in the record for this fact.

revenues were used [apparently by agreement] to restore teaching positions." *Matter of Springfield Educ. Ass'n, Mass. Teachers Ass'n, Nat'l Educ. Ass'n & Belhumeur*, 23 M.L.C. 233, 241 (1997). The commission concluded, however, that because the funds were "not necessarily committed to benefit the school contract," the union expenditures were not chargeable. *Id.* The union argues that the override campaign expenses were chargeable because it was a political activity dedicated to implementing their collective bargaining agreement. We agree. See *Lehnart* v. *Ferris Faculty Ass'n, supra* at 522 (plurality opinion of Blackmun, J.). By working to obtain the public money necessary to fund the teachers' collective bargaining agreement, the override campaign activity was directed at implementing that agreement and therefore was chargeable, regardless of whether Salisbury was unconditionally bound to use those funds for that purpose. See *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, supra* at 448 (union may charge for those activities "normally or reasonably employed" to fulfil its duties as exclusive representative). The costs associated with the override campaign were therefore chargeable.

4. *Conclusion.* The commission's decision is affirmed except for the three modifications discussed above: the commission should have deducted the identified fourteen hours of noncharge-able accounting time, but should not have deducted the costs of the Salisbury override campaign nor the costs of the article in the union publication. The case is remanded to the commission for entry of an order consistent with this opinion.

*So ordered.*