CITY OF BOSTON *vs.* LABOR RELATIONS COMMISSION; SERVICE
EMPLOYEES INTERNATIONAL UNION, LOCAL 285, AFL-CIO,
intervener.[1]

No. 03-P-465.

Suffolk. February 24, 2004. - June 28, 2004.

Present: DOERFER, COHEN, & MILLS, JJ.

*Labor Relations Commission. Labor,* Unfair labor practice, Judicial review.
*Administrative Law,* Judicial review, Substantial evidence.

Substantial evidence in the record of a labor dispute supported the finding of
the Labor Relations Commission (commission) that a certain document (an
evaluation claimed by the employer to be confidential) was relevant and
reasonably necessary to the union's processing of its grievance [400-401];
however, the commission abused its discretion when it ruled, without
considering evidence available to it or remanding the matter for an in
camera review of the document by the hearing officer, that the employer
had not established any likelihood of harm flowing from a disclosure of
the document and that the document must be disclosed without determin-
ing the limits of its use [401-403].

APPEAL from a decision of the Labor Relations Commission.

*Robert J. Boyle, Jr.,* Special Assistant Corporation Counsel,
for the plaintiff.

*David B. Rome* for the intervener.

DOERFER, J. We consider the circumstances under which docu-
ments claimed to be confidential may be required to be produced
in order to assist a union in evaluating and pursuing a grievance.
The failure to produce the documents led to an unfair labor
practice proceeding before the Massachusetts Labor Relations
Commission (commission). We hold that the employer made a
sufficient showing of confidentiality to require the commission
to examine the document in camera before the commission

---

[1]The substance of the appeal was briefed and argued by the intervener.

could conclude that the withholding of the document was an unfair labor practice and require its production to the union.

*Facts.*[2] William Cotter was the acting deputy director of the homebuyer assistance unit (unit) of the public facilities department (department) of the city of Boston (city). Employees of that unit were not satisfied with the management style of Cotter and brought their concerns to the attention of the city and to their union, Local 285 of the Service Employees International Union, AFL-CIO (union).

The city obtained the services of a management consultant, Kagan Associates (Kagan), in order to work with Cotter and the employees he supervised in the hopes of improving the situation. Included in the scope of services to be performed by Kagan was to help Cotter "develop a greater appreciation for the skills and competencies he brings to his position"; "better understand where his preferences and work style may invite conflict with staff members and undermine his and their performance"; and "develop his leadership-by-example skills." Kagan was "to work . . . with [Cotter] as the focus to evaluate his leadership strengths and limitations, and to try to provide a forum to help him develop more positive ways of dealing with" those people who reported directly to him.

On September 24, 1996, Kagan prepared a written report (Kagan evaluation) which included "[Kagan's] evaluation of the situation from [Cotter's] perspective. . . . [Cotter] was [Kagan's] primary focus, so [it] evaluated his style and what [it] thought [Cotter's supervisor] might do . . . with respect to [Cotter's] style." The city regarded the Kagan evaluation as confidential and handled it as a confidential document.

The issues between Cotter and the employees whom he supervised eventually led to the filing of a grievance by the union on September 27, 1996. The grievance alleged that the department had "violated the preamble and all other articles applicable of the Local 285 SEIU contract — management has acted in a manner not assuring proper respect and dignity to employees in the unit. A constructive and workable labor

---

[2]We draw the relevant facts from the record of the proceedings before the commission, which includes the record of the proceedings before a hearing officer.

relationship has not been maintained." As part of the grievance process, the union met with Joanne Massaro, then executive assistant to the deputy director of the department, and during these meetings, the union made the city aware that its grievance concerned Cotter in particular. During the grievance process, the union requested, orally and in writing, "all written material including but not limited to communications, notes, interview notes, and evaluations done by Kagan Associates." On November 15, 1996, the city denied the request in writing because it was overly broad, unduly burdensome, and the information requested was confidential.

On November 20, 1996, the union filed an unfair labor practice charge with the commission, charging the city with a violation of G. L. c. 150E, §§ 10(*a*)(1) and 10(*a*)(5), by not disclosing the Kagan evaluation. On July 16, 1998, a commission hearing officer determined that the Kagan evaluation was not relevant or reasonably necessary for the union to process its grievance. Pursuant to 456 Code Mass. Regs. § 13.15 (1993), the union appealed to the full commission on July 29, 1998.[3]

The agreed-upon issue before the commission was whether the union had demonstrated that the requested information was relevant and reasonably necessary for the union to pursue or evaluate its grievance. If so, the parties further agreed that the city had the burden of demonstrating that its interests in nondisclosure are legitimate and substantial; absent a showing of great likelihood of harm flowing from the disclosure, the requirement that a bargaining representative be furnished with the information overcomes any claim of confidentiality.

There is no reason to reverse the conclusion of the commission that the requested information was relevant and reasonably

---

[3]On February 7, 1997, the union, in another attempt to get a copy of the Kagan evaluation, made a public records request to the city's director of labor relations seeking the identical information. The city denied this request. The union appealed the city's denial to the Secretary of State's office, public records division. On April 28, 1997, the public records division, after reviewing the Kagan evaluation, determined that under G. L. c. 4, § 7(26)(*c*), the city did not have to provide it to the union because it was "evaluative of identifiable individuals and therefore sufficiently personal in nature to be exempt from mandatory disclosure." The correctness of the action of the public records division is not before us.

necessary to enable the union to pursue its grievance. However, we conclude that the commission abused its discretion when it ruled, without considering all evidence available to it, that the city had not established any likelihood of harm flowing from a disclosure of the Kagan evaluation.

Our review is governed by G. L. c. 30A, § 14. See *Belhumeur* v. *Labor Relations Commn.*, 432 Mass. 458, 462 (2000). Therefore, we "give due weight to the experience, technical competence, and specialized knowledge of the agency." G. L. c. 30A, § 14(7). When issues of law are involved, however, we review the decision de novo. *Belhumeur*, 432 Mass. at 463. See *Service Employees Intl. Union, AFL-CIO, Local 509* v. *Labor Relations Commn.*, 431 Mass. 710, 713 (2000). Additionally, there must be substantial evidence supporting the commission's findings. *Goncalves* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 289, 295 (1997).

*Relevance and reasonable necessity.* The parties agree that when a union seeks information that pertains to employees outside of the bargaining unit, it "must demonstrate more precisely the relevance of the data requested," and therefore, cannot "meet its burden . . . by demonstrating only an abstract, potential relevance."[4] We find substantial evidence in the record to support the commission's finding that the Kagan evaluation is relevant and reasonably necessary to the union's processing of the grievance.[5]

There was evidence to the effect that the city was aware "that the [u]nion's grievance concerned management's, and in particular, Cotter's, treatment of bargaining unit members" and that it was therefore reasonable for the union to believe that the

---

[4]Both parties as well as the commission discuss the "relevant and reasonably necessary" test as one requiring a showing of relevancy.

The city argued to the commission that because the union's own bargaining unit members could testify and provide information with respect to the grievance, the union failed to show reasonable necessity. The commission noted, however, that other source information becomes significant only after "the employer has established legitimate and substantial interests in non-disclosure," and the commission then "weighs the union's need for the information against the employer's . . . interests in non-disclosure."

[5]We will not discuss the hearing officer's findings in detail since they were taken into consideration by the commission as part of the record.

Kagan evaluation would "shed light" on whether the department had violated the collective bargaining agreement. The commission further found that because the Kagan evaluation could enable the union to determine the merits of its grievance, it was relevant and reasonably necessary to the union in performing its representational responsibilities. Moreover, the evidence shows that the department was aware that the grievance concerned Cotter. The record also demonstrates that the Kagan evaluation contained an assessment of Cotter's approaches to management as well as recommendations as to their efficacy. Taken together, substantial evidence existed to support the commission's finding of relevance and reasonable necessity. See *Goncalves*, 43 Mass. App. Ct. at 295.

*Likelihood of harm flowing from disclosure.* Once a union demonstrates that the information it requests is relevant and reasonably necessary, an employer has the burden of demonstrating that its interests in nondisclosure are legitimate and substantial; absent a showing of great likelihood of harm flowing from the disclosure, the requirement that a bargaining representative be furnished with the information overcomes any claim of confidentiality.[6] We find that the commission abused its discretion when it ruled, without considering the evidence available to it, that the city had not established any likelihood of harm flowing from a disclosure of the Kagan evaluation.[7]

The city argued, among other things, that disclosure would be an invasion of Cotter's privacy interests, would undermine Cotter's authority, and would have a chilling effect on the department's future willingness to provide such consulting. As recited above, the evidence established that the Kagan evalua-

---

[6]The parties agree on these general principles of administrative law governing an employer's showing of legitimate and substantial interests in nondisclosure. See *Boston Sch. Comm.*, 13 M.L.C. 1290, 1298 (1986).

[7]The commission ruled that even if the Kagan evaluation were confidential, the city had failed to "demonstrate a great likelihood of harm flowing from the its [*sic*] disclosure of the document or *any evidence that it attempted to provide a redacted or modified form of the [Kagan evaluation] to the Union*" (emphasis added). Simple redaction of information that would identify Cotter would serve no purpose because the entire document related to him. The city's position that no redaction would protect Cotter's privacy interests could not be evaluated without an in camera inspection of the document, given the strong evidence relating to the content of the document discussed herein.

tion would certainly contain personal information and was targeted at helping him to develop and improve his personal skills and management style. The Kagan consultation focused on Cotter's personality and the problems that his persona might create in his dealings with his subordinates. The project was aimed at his personal development, and was supposed to achieve results by coaching and self evaluation. There was to be a frank focus not only on his skills but his limitations, and a drawing out of his own perceptions of those strengths and weaknesses. Kagan's work was not merely an assessment but a remedial approach to try to improve a difficult personal situation, which would involve an acknowledgment by Cotter of his weaknesses as well as his strengths.

The hearing officer did not reach the question of the likelihood of harm flowing from disclosure since the hearing officer ruled that the information was not relevant. The city requested, in its supplementary statement, that if the commission found the Kagan evaluation relevant, it remand the matter to the hearing officer for an in camera review and decision in the first instance on confidentiality. Thus, the city brought the necessity of an in camera review to the attention of the commission. The commission found, without viewing the Kagan evaluation in camera or remanding the matter to the hearing officer for the hearing officer to conduct such a review, as requested by the city, that the city failed to establish a likelihood of harm flowing from its disclosure. This finding was not supported by substantial evidence.

Disclosure of information likely to be contained in the Kagan evaluation could well harm the city and its employee in its efforts to counsel and improve the employee's job performance. Disclosure of such a document should be preceded by a thoughtful review in order to balance these harms against the relevance of the information in the document to the claims of the union. Cf. *Wakefield Teachers Assn.* v. *School Comm. of Wakefield*, 431 Mass. 792, 802 (2000) (discussing public policy of public records' exemption for disciplinary report and quoting lower court judge: "It would not be unreasonable to conclude that disclosure of this sensitive and careful investigation and analysis would make the same kind of investigation and analysis dif-

ficult, if not impossible, in the future. An assurance of confidentiality to those who voluntarily participate in such investigations likely produces candor"); *Connolly* v. *Bromery*, 15 Mass. App. Ct. 661, 664 (1983) ("Raw data appraising the job performance of individuals — which is what we are dealing with here — is particularly personal and volatile.") The commission is not, of course, limited to the evidence provided to the hearing officer. 456 Code Mass. Regs. § 13.15(6) (1993).

Thus, we find that the commission abused its discretion when it decided, without viewing the Kagan evaluation or remanding the matter for an in camera review of the document by the hearing officer, that the city had failed to demonstrate a legitimate and substantial interest in nondisclosure of the Kagan evaluation and that it must be disclosed without any determination of the limits of its use.

We vacate and remand the matter to the commission with direction that it open the administrative hearing for in camera consideration of the Kagan evaluation, such review to take place by the commission or by a hearing officer at the discretion of the commission.[8]

*So ordered.*

---

[8]We do not make any order as to the precise scope of the hearing before the commission on remand.