Barrett, J.
The Brookline Educators Association (“BEA”) is the local labor union for teachers and other school personnel employed by the Town of Brookline, and is an affiliate of the Massachusetts Teachers Association (“MTA”) and the National Education Association (“NEA”). The six individual defendants (the “teachers”) were members of the collective bargaining unit represented by the BEA, but were not members of that union. Pursuant to G.L.c. 150E, §12 and the collective bargaining agreements between the BEA and the Brookline School Committee, the BEA, MTA and NEA (collectively, the “union”) brought this action to collect unpaid agency service fees for the school years 1993-94,1994-95,1995-96 and 1996-97 allegedly owed by the nonmember teachers.[4]
The teachers’ answer and counterclaim sought declaratory and injunctive relief as well as damages and attorney’s fees for the union’s alleged violation of their constitutional rights in demanding agency service fees in excess of the union’s actual collective bargaining expenses. The counterclaim was dismissed upon the courts allowance of the union’s motion for judgment on the pleadings. The court also allowed the union’s motion to stay discovery, thereby foreclosing the teachers’ requests for production by the BEA and MTA of a broad range of financial and administrative documents.
The union moved for summary judgment, and the teachers responded with a cross-motion for partial summary judgment challenging the adequacy of the demands for the union agency service fee for three of the four school years in question. They also submitted a Mass. R. Civ. R, Rule 56 (f), affidavit by their counsel asserting that the courts order to stay discovery was preventing the teachers from obtaining information required for the formulation of an adequate defense. The trial court allowed the Association’s motion to strike the Rule 56(f) affidavit of the teachers’ counsel, and also granted summary judgment in favor of the union *64 on the ground that “[t]he defendants did not raise timely objections to the assessment of the plaintiffs agency fee nor did they file their complaints with the Mass. Labor Relations Comm.” This Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal by the teachers followed.
Summary judgment was properly granted only if the Association satisfied its burden, as the Rule 56 moving parly, of affirmatively establishing that there is no genuine issue of material fact in this case and that it was entitled to judgment in its favor as a matter of law. O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000). In deciding that issue, we view the evidence in the light most favorable to the teachers. Alba v. Raytheon Co., 441 Mass. 836, 840 (2004).
It is undisputed that, whether motivated by political, ideological or purely pragmatic considerations, the teachers had the First Amendment right to decline membership in the union. The parties also agree that the corollary of that right was the teachers’ statutory and contractual obligation to pay their proportionate share of the collective bargaining expenses incurred by the union in negotiating and securing employment rights and benefits (salaries, vacation and sick time, health insurance etc.) for the bargaining unit in which the teachers were included. An “agency service fee” is the amount owed by a non-union employee for his or her share of collective bargaining expenses, and may not exceed the amount of dues charged to a member for the union’s bargaining activities.
Article 4.30 of the parties’ collective bargaining agreement[5] authorized the union to set the agency service fee in an amount equal to “the cost of collective bargaining and contract administration,” “to administer procedures relating to the fees in accordance with all applicable laws and regulations,” and to “pursue payment through whatever legal means it deem[ed] appropriate.” The “applicable laws and regulations” governing service fees include the requirements for a union’s fee demand and for a nonmember’s challenge of the validity or amount of the fee set forth in the Labor Relations Commission’s [the “Commission”] Regulations, 456 CMR 17.00 et seq. Sections 17.06(1) and (2) state: “(1) Employees may challenge the validity or amount of a service fee by filing a prohibited practice charge with the Commission ... (2) within six months of the union’s fee demand. ...” The parties’ collective bargaining agreement also provided a “rebate procedure” for contesting the amount of service fees. It is undisputed that the teachers failed to pursue either of these administrative avenues for challenging the fees in question.
While it is settled that a non-union employee is not required to resort to the union’s rebate procedure, Harrison v. Massachusetts Society of Professors/Faculty Staff Union, 405 Mass. 56, 64-65 (1989), it appears equally clear that a determination by the Labor Relations Commission of at least the amount of disputed service fees is necessary. ‘The doctrine of primary jurisdiction... counsels a court to stay its hand when the issue in litigation is within the special competence of an agency. ...” School Committee of Greenfield v. Greenfield Education Ass’n, 385 Mass. 70, 76 (1982), quoting Murphy v. Administrator of the Div. of Personnel Administration, 377 Mass. 217, 221 (1979). As the calculation of fees in the “specific factual context” of each non-union employee’s case is “within the expertise and primary jurisdiction of the commission,” “challenges to the amount of the agency service fee ... are to be decided by the commission in the first instance.” Harrison, supra, at 59-60, citing Greenfield, supra, at 76. Thus, the teacher’s failure to pursue administrative remedies would have automatically constituted a waiver in this case of their service fee objections had those objections been limited to the dollar amount of the fees.
*65 However, “constitutional issues” raised by a non-union employee’s claims are not “committed to the commission,” Harrison, supra, at 59, and “constitutional challenges to the procedure by which agency fees are determined ... are appropriate for judicial determination” prior to administrative review. Id. at 60. As a union’s “mere demand” for service fees necessarily “implicates nonmembers’ constitutional rights,” Id. at 62, citing Chicago Teachers Union Local No. 1 v. Hudson, 475 U.S. 292, 309 (1986), the teachers were entitled to seek judicial review of the constitutional adequacy and validity of the union’s fee demands without first filing a complaint with the Labor Relations Commission.[6]
Moreover, the record before the trial court and on this appeal clearly indicates that the teachers had valid grounds for contesting the union’s fee demands. The demands for school years 1993-1994, 19941995 and 1995-1996 appear patently insufficient to pass constitutional muster in that they failed to include a listing of BEA’s “major categories of expenses,” with “verification by an independent auditor.” Chicago Teachers Union, Local No. 1 v. Hudson, supra, at 207 n.18. Such a breakdown of expenses is essential to enable a non-union employee to determine if the agency service fee demanded is a proper pro rata charge for the union’s “costs of collective bargaining, contract administration and grievance adjustment,” Id. at 294, or instead illegally includes expenditures in “support [of] the social, political or speech activities of the [union]” for which the nonmember cannot be charged. Harrison v. Massachusetts Soc. of Professors/Faculty Staff Union, 405 Mass. 56, 61-62 (1989), quoting Abood v. Detroit Board of Educa., 431 U.S. 209, 235 (1977). As stated by the Supreme Judicial Court in Harrison:
The Supreme Court... in Hudson ... clarified the procedural requirements for agency service fee demands to ensure that an impermissible use of the nonmembers’ funds does not take place. There, the Supreme Court stated: ‘Basic considerations of fairness, as well as concern for the First Amendment rights at stake ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union’s fee. Leaving the nonunion employees in the dark about the source of the figure for the agency fee — and requiring them to object in order to receive information — does not adequately protect the careful distinctions drawn in Abood.’ (Emphasis added.) ... Thus, the Court required an ‘adequate explanation of the basis for the fee’ contemporaneous with a union’s agency fee demand.
Harrison, supra at 64. While the union’s demand letters for the three contested school years included a BEA “Local Association Agency Fee Explanation” listing expenditures as categorized by BEA’s own treasurer, the expense breakdown was not verified by an independent auditor. Further, the accountant who prepared other BEA financial statements for each of the school years in question stated that he had merely “compiled” the statements based on the representations of union management, and did not audit BEA’s financial records or data. A “compilation” is not the equivalent of an “audit,” Wareham Education Ass’n. v. Labor Relations Com *66 mission, 430 Mass. 81, 84-85 (1999), and a union is constitutionally mandated “to provide an independent audit in connection with a demand for agency fees....” Id. at 89. Finally, the accountant added the following, specific disclaimer to the balance sheets for each of the contested school years:
Management has elected to omit substantially all of the disclosures (and the statement of changes in financial position) required by generally accepted accounting principles. If the omitted disclosures (and the statement of changes in financial position) were included in the financial statements, they might influence the user’s conclusions about the Association’s financial position and results of operations. Accordingly, these financial statements are not designed for those who are not informed about such matters.
The balance sheets were mailed as part of the service fee demands. Therefore, viewing the parties’ Rules 56 materials in favor of the teachers for summary judgment purposes, it is clear that the teachers advanced a sufficient basis for their objections to, and request for judicial review of, the adequacy of the union’s fee demands for the three school years in question.
While necessarily conceding that the teachers were entitled to judicial review of the fee demands’ constitutional infirmities, the union argues that the teachers were required to take affirmative action to obtain such review and waived that right by simply waiting until this fee collection action was commenced to voice their objections. The union points to Harrison, supra, in which objecting nonmembers filed suit for declaratory relief upon being served with improper fee demands. The union also relies on Belhumer v. LRC, 432 Mass. 458 (2000) for the proposition that
[i]f a nonmember objects to the amount of the agency fee on the basis that the fee includes expenditures for ideological activities unrelated to collective bargaining, the nonmember has an obligation affirmatively to voice the objection....
Id. at 462. In this case, however, the teachers are challenging the sufficiency of the demands themselves rather than just the amount of the fees charged. Whether such amount can or should be challenged necessarily depends on the adequacy of the information provided to the non-union employee in the fee demand itself. As stated by the Supreme Judicial Court in Harrison,
The Hudson case... requires that ‘potential objectors’ be provided with sufficient information with the agency fee demand in order to gauge its propriety. [Citation omitted]. Regardless of the amount or type of information that may be available, the union cannot require a nonmember to object to the fee demand in order to receive the information justifying the fee. If the financial information is to be useful to a nonmember’s decision whether to pay the fee or to challenge it, the information must come with, or prior to, the agency fee demand [emphasis supplied].
Id. at 64. The union cites no authority for their position, contrary to Harrison, that the teachers were obligated to object to, or initiate any protest of, the union’s fee demand if insufficient information was included to enable the teachers to determine if there was a basis for objection which would warrant the time and expense of a legal challenge. Therefore, the union failed to establish as a matter of law that the teachers waived their constitutional objections to the union’s service fee demands at issue herein by failing to institute a timely prior challenge. Summary *67 judgment should not have been entered against the teachers for the unpaid fees assessed for three of the four school years in question.
Summary judgment for the plaintiffs is vacated, and the case is returned to the Brookline Division for trial.
So ordered.

 The total amount of fees sought from each teacher varied depending on the number of years worked between 1992 and 1997 and the full-time or part-time employment status of the individual. The fees ranged from $199.77 sought from Benjamin Gresser to $1,582.95 demanded of James Dudley.

 The provisions of Article 4.30 remained consistent throughout succeeding agreements covering the school years in questions.

 Section 17.01 of 456 CMR does permit a nonmember to challenge the “validity” of a service fee, at least in terms of the union’s compliance with 456 CMR 17.05. That section requires a fee demand to be in writing and to include “the amount of the service fee, the period for which the fee is assessed, the method by which payment is to be made, the person to whom payment should be made and the consequences of a failure to pay the fee.” The union’s fee demands in this case satisfied those basic requirements. Nothing in §17.05 addresses the constitutional requirements for an adequate demand.